UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC. d/b/a INTEGRATED SPORTS MEDIA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>JEANETTE RUIZ ARIAS, individually and d/b/a FONDA COLOMBIANA; and 818 SPORTS BAR & GRILL, INC., an unknown business entity d/b/a FONDA COLOMBIANA,<br><br>　　Defendants. | No. C 22-05773 WHA<br><br>**ORDER RE MOTION FOR DEFAULT JUDGMENT** |

## INTRODUCTION

Plaintiff brings this action against defendants restaurant owners and operators for unlawfully broadcasting a sports program for which plaintiff owned exclusive distribution rights. Default has been entered against defendants, and plaintiff now moves for default judgment. For the following reasons, the motion is **GRANTED IN PART**.

## STATEMENT

Plaintiff Innovative Sports Management, Inc. is a commercial distributor and closed-circuit licensor of sports and entertainment television programming, incorporated and having its principal place of business in New Jersey. Innovative Sports was granted exclusive nationwide commercial distribution rights to the Brazil versus Colombia soccer game, which

was telecast nationwide on October 10, 2021. Innovative Sports sublicensed the rights to publicly exhibit the game to various entities through North America, including those in California. Defendant 818 Sports Bar & Grill, Inc. was owner and licensee of restaurant and bar Fonda Colombiana at 1442 South White Road, San Jose, California 95127. Defendant Jeanette Ruiz Arias was Chief Executive Officer and Chief Financial Officer of 818 Sports. Our complaint alleges that defendants, who were not sublicensed, unlawfully broadcast the soccer game to patrons at Fonda Colombiana on October 10, 2021 (Compl. ¶¶ 6–9, 20–26).

Plaintiff filed this action in October 2022, alleging four claims for violations of 47 U.S.C. §§ 553 and 605, conversion, and California Business and Professions Code Section 17200 (Dkt. No. 1). Defendant 818 Sports was served via substituted service at Fonda Colombiana on October 20, 2022, and defendant Arias was served the same way one week later, on October 27, 2022 (Dkt. Nos. 15, 16). Neither defendant has answered the complaint or otherwise appeared in this action, and the deadline to answer has passed. Default judgment was entered against defendants on December 8, 2022. A prior order denying vacatur of the initial case management conference required plaintiff to provide defendants with updated notice of proceedings, which plaintiff served on defendants via mail (Dkt. Nos. 20, 21). Plaintiff filed the instant motion for default judgment in February 2023, seeking $2,500 in statutory damages and $17,500 in enhanced damages for violation of Section 553, $550 for conversion, and attorneys' fees (Br. 18, 25). Plaintiff also voluntarily dismissed its claims against defendant Adolfo Cendejas Guerrero the day after it filed the instant motion, on February 9, 2023 (Dkt. No. 23).

Plaintiff has continued to serve notices of scheduled hearings on defendants via mail (Dkt. Nos. 26, 29). Neither defendant nor any representative for defendants appeared at the hearing for this motion for default judgment on May 25, 2023. This order thus follows briefing and oral argument by plaintiff's counsel.

## ANALYSIS

A court has discretion to grant default judgment against a party that fails to plead or otherwise defend against a claim for relief. *See* FRCP 55; *Aldabe v. Aldabe*, 616 F.2d 1089,

2

1092 (9th Cir. 1980). To do so, a district court must first evaluate the existence of subject-matter and personal jurisdiction over the action, as well as the adequacy of service of process. *See SEC. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007); *In re Tuli*, 172 F.3d 707, 712–13 (9th Cir. 1999). If those preliminaries are satisfied, a court then considers the seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). All factual allegations, except those for damages, are taken as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Nevertheless, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Furthermore, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

1. **JURISDICTION.**

District courts have subject-matter jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. Supplemental jurisdiction extends to all other claims related to a civil action if (1) a district court has proper subject-matter jurisdiction and (2) if those additional claims form part of the same case or controversy. 28 U.S.C. § 1367. Plaintiff here asserts federal claims under the Communications Act of 1934 and the Cable & Television Consumer Protection and Competition Act of 1992, and supplemental jurisdiction covers the state law claims.

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [FRCP] 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citation omitted). FRCP 4(e)(1) allows for service of process on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is

1 made." Plaintiff thus relies on California Code of Civil Procedure Section 415.20(b), which

2 states that:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

In asserting that substituted service was proper, plaintiff relies on Fonda Colombiana as defendant Arias's "usual place of business" (Br. 14–15). According to the process server's affidavit of reasonable diligence, service was attempted three times at the restaurant: the first time, Arias was not present and the "person in charge" was not able to provide a schedule for Arias being present; the restaurant was closed on the second attempt; and the third time, the process server left the summons with the person in charge who declined to provide a name, but was described as a 35-year-old Hispanic woman (Dkt. No. 15). Plaintiff subsequently mailed a copy to the same premises (*ibid.*).

"Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence.'" *Piper, Inc. v. Pavlyukovskyy*, No. 20-CV-03663-WHO, 2020 WL 6868831, at *3 (N.D. Cal. Nov. 23, 2020) (Judge William H. Orrick) (citation omitted); *see Coomes v. Shamji*, 260 F. App'x 988, 988 (9th Cir. 2007) (same); *Schumacher v. Airbnb, Inc.*, No. C 15-5734 CW, 2016 WL 7826667, at *4 (N.D. Cal. Nov. 9, 2016) (Judge Claudia Wilken) (collecting cases). Plaintiff's research indicated that California Secretary of State records showed Arias as Chief Executive Officer, Secretary, Chief Financial Officer, Director, and Agent for service of process for 818 Sports (Riley Decl. Exh. 1). That research likewise indicated that 818 Sports's principal office and mailing address was Fonda

4

Colombiana (*ibid.*). The process server's affidavit describes how the person in charge knew who Arias was, and even though she did not know Arias's schedule, her statement implies that Arias appeared at the restaurant with some regularity (Dkt. No. 15). As such, Fonda Colombiana could fairly be considered Arias's "usual place of business" to support substituted service under California law.

As for 818 Sports, FRCP 4(h) governs service of process for corporations. Rule 4(h)(1)(A) states that such service is permissible "in the manner prescribed by Rule 4(e)(1) for serving an individual." And California Code of Civil Procedure Section 415.20(a) likewise allows a corporation to be served via substituted service at its office. According to the process server's affidavit, the summons for 818 Sports was left with the same woman at Fonda Colombiana (Dkt. No. 16). Given the foregoing analysis evaluating the sufficiency of substituted service pursuant to Rule 4(e)(1), this order likewise finds 818 Sports properly served.

At bottom, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citation omitted). This order finds service of process on both defendants sufficient, as the foregoing was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Venue is also appropriate here. As such, plaintiff meets all jurisdictional requirements for their motion for default judgment to be considered.

**2.    *EITEL* FACTORS.**

With threshold jurisdictional requirements satisfied, this order now applies the *Eitel* factors, and finds that they support plaintiff's requested default judgment. This order notes that the below *Eitel* analysis largely tracks a prior decision by the undersigned in a substantially similar action. *G & G Closed Cir. Events, LLC v. Segura*, No. C 20-07576 WHA, 2021 WL 3141191, at *2–3 (N.D. Cal. July 26, 2021), *aff'd*, No. 21-16381, 2022 WL 1499650 (9th Cir. May 12, 2022).

The first factor, prejudice to plaintiff, and the seventh factor, the policy favoring decisions on the merits, both support their opposing positions and thus cancel each other out. As such, those factors are neutral.

As for the fourth *Eitel* factor regarding the sum of money at stake, the requested amount is moderate, thus favoring plaintiff. Plaintiff requests $20,550 plus attorney's fees, which is relatively restrained given defendants' potential exposure from the claims alleged. That said, such a sum certainly could dramatically impact a small business such as Fonda Colombiana, so factor four only slightly favors plaintiff.

The fifth *Eitel* factor concerns the possibility of a material factual dispute. Substituted service of process is less straightforward than personal service in that it can require inferences based on available facts to conclude that reasonable diligence was met. Nevertheless, this order has not found any facts supporting substituted service to be suspect, and because defendants have not answered the complaint or otherwise defended against this action, the possibility of a dispute is simply unknown. The fifth factor is thus neutral at best. For those same reasons, the sixth factor (default due to excusable neglect) slightly favors plaintiff, as this order finds no basis on the record before us to question service of process nor to suggest excusable neglect.

Finally, this order considers the second and third *Eitel* factors together because examining the merits of a substantive claim and the sufficiency of a complaint share the same requirement, namely stating a claim "on which the plaintiff may recover." *See Kloepping v. Fireman's Fund*, 1996 WL 75314 at *2 (N.D. Cal. 1996) (Judge Thelton E. Henderson) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). Plaintiff concedes that our prior decision *Segura* found a Section 605 claim insufficient, and so in moving for default judgment seeks liability only under the Section 553 claim (Br. 11). This order thus finds plaintiff's Section 605 claim insufficient.

To state a claim under 47 U.S.C. § 553, a plaintiff must demonstrate a proprietary interest in a program that the defendant unlawfully intercepted. Section 553 prohibits intercepting a cable signal. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008). Plaintiff states it

6

had an exclusive license and that defendants unlawfully intercepted and exhibited the program at their restaurant Fonda Colombiana, which is sufficient to sustain a claim under Section 553 (Compl. ¶¶ 20–27, 44).

Plaintiff has also properly stated a claim for relief for conversion, of which the measure of damages is determined by California Civil Code § 3336. The elements for conversion in California are: (1) ownership or right to possession of property; (2) wrongful disposition of the property right; and (3) damages. *See Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Plaintiff claims ownership of the nationwide distribution rights of the program, the wrongful interception and exhibition of the program by defendants, and damages (Compl. ¶¶ 20–23, 25, 38–41).

In sum, the *Eitel* factors weigh in favor of entering default judgment against defendants for plaintiff's Section 553 and conversion claims.

### 3. RELIEF REQUESTED.

Under Section 553, a plaintiff is entitled to damages of no less than $250, but no more than $10,000, "as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). Enhanced damages of up to $50,000 may be awarded, in the district court's discretion, if the "violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B). Plaintiff requests $2,500 in statutory damages and $17,500 in enhanced damages under Section 553 and $550 in damages from the conversion claim, as well as the opportunity to submit attorney's fees pursuant to Section 553(c)(2)(C). Plaintiff is required to prove up all damages sought in the complaint. *TeleVideo*, 826 F.2d at 917–18. Additionally, no relief sought may be different in kind, or exceed in amount, that which is demanded in the pleadings. *See* FRCP 54(c).

In support of asserted damages, plaintiff submitted the declaration of Mario Galvez, a private investigator who visited Fonda Colombiana on the day of the game and observed the alleged unlawful display. He stayed on the premises for 15 minutes, counting 43 to 48 patrons present during his stay, estimating the restaurant's maximum capacity at 50 patrons. He noted seven flat screen televisions of 40 to 50 inches on the walls of the restaurant. Mr. Galvez

7

entered at the beginning of the second half of the soccer game. He did not pay a cover charge. Of the photos attached to his declaration, just one captured one of the television screens, which appears to show a Brazilian soccer player dressed in the distinctive yellow jersey.

Regarding evidence of damages for conversion, plaintiff asserts that a sublicense fee for an establishment of Fonda Colombiana's capacity to broadcast the game would have been $550 (Br. 25; Jacobs Aff. ¶ 8). Given the foregoing, plaintiff has sufficiently demonstrated damages should be awarded.

While plaintiff is entitled to damages, this order next determines the appropriate scope of such damages. In *Segura*, the undersigned found statutory damages under Section 553(c)(3)(A)(ii) "to be the cost of a sublicense for the telecast," which here would be $550. 2021 WL 3141191, at *5. Plaintiff acknowledges that reasoning, but nevertheless argues that actual damages are but one factor to be considered when determining statutory damages (Br. 18–21). Plaintiff requests that "statutory damages should go beyond reimbursement" because "a violator's profit is implicated," but nevertheless concedes that "[i]n a default situation, however, Plaintiff cannot establish a violator's profit" (*ibid.*). Plaintiff also points to deterrence as well as the facts of "near capacity patronage and the number of televisions" as warranting statutory damages over the licensing fee (Br. 20–21).

Plaintiff has been granted two default judgment awards similar to the instant request in our district over the past two years. Recognizing the inherent fact that relief varies according to the facts of the case, this order considers these well-reasoned orders granting plaintiff default judgment to guide its determination of the appropriate scope of damages.

In *Innovative Sports Mgmt., Inc. v. Valenzuela*, No. 19-CV-02785-JSW-JCS, 2021 WL 5238592 (N.D. Cal. Aug. 30, 2021), *R. & R. adopted*, 2021 WL 5238591 (N.D. Cal. Oct. 8, 2021), Chief Magistrate Judge Joseph C. Spero awarded plaintiff $1,000 in statutory damages (which was the license fee) and no enhanced damages pursuant to Section 553, $1,000 in damages for conversion, and permitted plaintiff to submit evidence regarding attorney's fees. This was in light of there being "no cover charge" and "15-20 people . . . even though the capacity of the restaurant is approximately 60 people." *Id.* at *6. Enhanced damages were not

warranted because there was "no specific factual allegations or evidence showing that Defendants knew that their conduct was unlawful." *Ibid.*

In *Innovative Sports Mgmt., Inc. v. Huaman*, No. 22-CV-05796-VKD, 2023 WL 3194436, at *4 (N.D. Cal. May 1, 2023), Magistrate Judge Virginia K. DeMarchi in granting default judgment awarded plaintiff $1,100 in statutory damages (which was twice the licensing fee) based on an investigator's observations that the offending program was "shown on the one television screen" at an establishment "at about half-capacity." Judge DeMarchi declined to award enhanced damages pursuant to Section 605, found the conversion claim duplicative, and permitted plaintiff to submit evidence regarding attorney's fees. Enhanced damages were not warranted because there was "no evidence that [defendant] advertised or promoted the broadcast of the Program, required a cover charge, or charged a premium for food and beverages on the date of the broadcast." *Id.* at *5.

In contrast to the foregoing decisions, here Mr. Galvez reported that the soccer game at Fonda Colombiana drew a near-capacity crowd and was being played on seven television screens. Indeed, district courts have considered factors such as the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant" to determine "proper compensation and deterrence." *J & J Sports Prods., Inc. v. Concepcion*, No. C 10-05092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011). As such, this order finds plaintiff's requested statutory damages of $2,500 appropriate.

As for enhanced damages, here there is sufficient evidence that the "violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B). Plaintiffs have alleged that defendants advertised the showing of the soccer game on the restaurant's Facebook page (Compl. ¶ 18). Generally, the "presence of . . . advertising the Program indicates affirmative action for the purpose of financial gain." *Integrated Sports Media, Inc. v. Mendez*, No. C 10-3516 PJH, 2014 WL 3728594, at *6 (N.D. Cal. July 28, 2014) (Judge Laurel Beeler). Plaintiff's counsel also explained at the hearing that the lack of a cover charge can be evidence of a commercial advantage, because a cover charge

9

could usually be used to offset any licensing fee. As Fonda Colombiana did not pay a licensing fee to show the soccer game, it could instead undercut its competitors who did pay such a fee by forgoing a cover charge, thereby attracting even more patrons. Although "[t]here is no evidence that these defendants are repeat offenders," here defendants did advertise and almost filled the premises to capacity. *Valenzuela*, 2021 WL 5238592, at *6.

Ultimately, a district court exercises discretion to find "a sanction that deters but does not destroy." *See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). Such a damages award "serves the purpose of removing profits from the defendant and deterring future piracy." *J & J Sports Prods., Inc. v. Mosley*, No. C-10-5126 CW EMC, 2011 WL 2066713, at *7 (N.D. Cal. Apr. 13, 2011), *R. & R. adopted*, 2011 WL 2039374 (N.D. Cal. May 25, 2011) (Judge Edward M. Chen). This order thus awards $6,000 in enhanced damages. In total, this order **AWARDS** $8,500 in damages as sufficient in capturing reimbursement, deterrence, and disgorgement under Section 553.

Plaintiff also seeks an award pursuant to its conversion claim. As stated, the sublicense fee for a commercial entity of Fonda Colombiana's capacity would have been $550. Plaintiff's request is appropriate, and this order accordingly **AWARDS** $550 in damages for conversion.

Lastly, plaintiff requests attorney's fees pursuant to Section 553(c)(2) and requests the opportunity to submit evidence in support of its request. This request to supply requisite evidence is **GRANTED**.

## CONCLUSION

To the extent stated above, plaintiff's default judgment motion is **GRANTED IN PART**. Plaintiff is **AWARDED** a total of **$9,050** in damages ($8,500 in Section 553 damages and $550 in conversion damages). Plaintiff **SHALL** file a properly supported request for reasonable attorney's fees within **FOURTEEN DAYS** of the filing of this order.

**IT IS SO ORDERED.**

Dated: June 1, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10